**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

IN THE MATTER OF THE EXTRADITION     )
            OF                       )     Misc. No.  05-1609-CBS
BOGDANS HVALEJS                      )
                                     )


*MEMORANDUM:  THE LAW OF EXTRADITION*

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully files this memorandum of law regarding the extradition of Bogdans Hvalejs ("Hvalejs" or "the Fugitive").  This memorandum is intended to assist the Court in preparing for an extradition hearing, if Hvalejs elects to have such a hearing.

These extradition proceedings were commenced by the United States pursuant to 18 U.S.C. §3184 and the Treaty of Extradition between the United States and Latvia entered into force on March 1, 1924 (TS 677) and the Supplementary Treaty of October 10, 1934, entered into force on March 29, 1935 (TS 884), (hereinafter, collectively, "the Treaty").  Pursuant to the Treaty, Latvian authorities presented a formal request to the United States for Hvalejs's extradition.  A Complaint for Provisional Arrest with a View Towards Extradition was filed by the United States on behalf of the Republic of Latvia in this Court on January 12, 2005.  Hvalejs was brought before the Court on July 26, 2005, pursuant a writ of habeas corpus issued to the Essex County House of Correction, where Hvalejs is currently serving a criminal

1

sentence.[1]

Hvalejs's extradition is sought by Latvia for prosecution for the offenses of theft, in violation of Article 175, Part 3 of the Criminal Law of Latvia, and the illegal purchase and possession of narcotics (to wit: heroin) in violation of 253, Part 1 of the Criminal Law of Latvia.

Hvalejs has a right, pursuant to 18 U.S.C. §3184, to an extradition hearing at which the Court must consider the evidence of criminality submitted by the Republic of Latvia, as presented to the Court by the United States under the Treaty, and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. §3184. If the Court finds the fugitive extraditable, it must certify that conclusion to the Secretary of State, who ultimately decides whether to surrender Hvalejs. Because the law regulating extradition differs from ordinary criminal or civil proceedings so much as to be classed *sui generis*, the government offers this memorandum as a guide to the nature of the hearing and a description of its distinctive features.

I.   **Nature of the Hearing**

    A.   *Purpose of Hearing*

The purpose of the hearing required by 18 U.S.C. §3184 is to

---

[1] It is anticipated that Hvalejs will complete the sentence imposed by the Commonwealth of Massachusetts in November 2006. It should also be noted that Hvalejs is independently subject to deportation by U.S. Immigration and Customs Enforcement as a result of crimes he has committed in the United States.

determine whether a person arrested pursuant to a complaint in the United States on behalf of a foreign government is subject to surrender to the requesting country under the terms of the pertinent treaty and relevant law. *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997). If the court decides that the elements necessary for extradition are present, it incorporates these determinations in factual findings and conclusions of law styled as a certification of extraditability which is forwarded to the Department of State for disposition by the Secretary of State. *Id.* The decision to surrender the fugitive rests with the Secretary. *Id.*

   B.   *Elements Necessary for Extradition*

   A determination of extraditability is proper if:   (1) the judicial officer was authorized to conduct extradition proceedings; (2) the court had jurisdiction over the fugitive; (3) the applicable treaty was in full force and effect; (4) the crimes for which surrender was requested were covered by the treaties; and (5) there was competent legal evidence for the decision. *Ornelas v. Ruiz*, 161 U.S. 502 (1896). *Accord, Bingham v. Bradley*, 241 U.S. 511 (1916); *McNamara v. Henkel*, 226 U.S. 520 (1913).   More recently, the First Circuit has concluded that, "under 18 U.S.C. §3184, the judicial officer's inquiry is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum of evidence offered." *Kin-Hong*, 110 F.3d at 110; *United States v. Manzi*, 888 F.2d 204, 207 (1st Cir. 1989).

1.  Authority of the judicial officer.

There is no substantial question that federal judges are authorized pursuant to 18 U.S.C. §3184 to hear extradition cases.[2] Moreover, such authority is also vested in magistrate judges in the District of Massachusetts.  *See, Kin-Hong*, 110 F.3d at 107; *Romeo v. Roache*, 820 F.2d 540, 541 (1st Cir. 1987).

2.  Jurisdiction over the fugitive.

Although the Supreme Court included personal jurisdiction as an essential element for reasons of analytic completeness, the question of jurisdiction has not been a substantial issue in an extradition case in modern times.  If the fugitive is physically before the Court, it has personal jurisdiction over him. 18 U.S.C. §3184; *In re Pazienza*, 619 F.Supp. 611 (S.D.N.Y. 1985).

3.  Treaty in full force and effect.

The extradition statute, 18 U.S.C. §3184, requires that the treaty between the United States and the foreign government be in force at the time of the extradition.  18 U.S.C. §3184; s*ee also, Kin-Hong,* 110 F.3d at 112; *Argento v. Horn*, 241 F.2d 258 (6th Cir. 1957).  As part of its proof, the government will provide a declaration from an attorney in the Office of the Legal Adviser of the Department of State attesting that the treaty is in full force and effect.  The Department of State's opinion in this sphere is entitled to "great weight." *Kin-Hong*, 110 F.3d at 110; *see also,*

---

[2]  The authority of a particular judicial officer to hold an extradition hearing was a more contentious issue in the law's early days when cases were brought by private counsel before a variety of courts.

*Galanis v. Pallanck*, 568 F.2d 234 (2nd Cir. 1977); *Sayne v. Shipley*, 418 F.2d 679 (5th Cir. 1969) *cert. denied*, 398 U.S. 903 (1970).

Extradition treaties must be liberally construed to effect their purpose, namely, the surrender of fugitives for trial for their alleged offenses. *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276-293, 301 (1933). "[E]xtradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are in the interest of justice and friendly international relations." *Kin-Hong*, 110 F.3d at 110 (quotations and citations omitted). In discussing the application of this principle, the district court in *McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981), noted that:

> a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

In order to carry out a treaty obligation the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor v. Laubenheimer*, supra, 290 U.S. at 298; *In re Chan Kam-Shu*, 477 F.2d 333 (5th Cir. 1973).

4. Charges or conviction in the requesting state.

In this case, the Treaty provides for the return of fugitives charged with or convicted of a crime in the requesting state. <u>See</u>

Article II of the Treaty (theft) and Article VI of the United
Nations Convention against Illicit Traffic in Narcotic Drugs and
Psychotropic Substances (1988)(a/k/a "Vienna Convention")(heroin
purchase and possession).  The documents to be offered by the
United States on behalf of the Republic of Latvia will establish
that the Fugitive has been charged with these crimes.  Because
criminal procedures under other systems differ from ours, the
charging document will not necessarily be an indictment or a
criminal information.  In many countries, the charges are reflected
in the arrest warrant.  The Court should not be drawn into a
technical dispute over the significance of the term "charging
document." *Matter of Assarsson*, 687 F.2d 1157 (7th Cir. 1982)

     5.  Crime covered by the treaty.

     Extradition treaties create an obligation to surrender
fugitives under the circumstances defined in the treaty.  The
treaty may specify that extradition can be had for particular
offenses that are listed in the treaty, for any serious offense
that is punishable in both the requesting and requested state[3], for

---

     [3]     Dual criminality is not required *per se* for extradition;
it need be found only if the treaty so requires.  *Factor v.
Laubenheimer*, 290 U.S. 276 (1933); *In re Assarsson*, 635 F.2d 1237
(7th Cir. 1980).  A requesting country is not obliged to produce
evidence on all elements of a criminal offense nor to establish
that its crimes are identical to ours. *Kelly v. Griffin*, 241 U.S.
6, 15 (1916).  If a dual criminality analysis is required, the
court should examine the facts and decide whether the fugitive's
conduct would have been criminal under our law. *United States v.
Manzi*, 888 F.2d 204, 207(1st Cir. 1989).  The Supreme Court noted
in *Collins v. Loisel*, 259 U.S. 309 (1922) that:

     The law does not require that the name by which the crime is
     described in the two countries shall be the same; nor that the

some combination of those two categories, or for an even broader range of offenses.  The Court must determine whether the crime for which extradition is requested is among the offenses specified in the treaty as giving rise to an obligation to extradite.  In this instance, the government will offer into evidence the affidavit of a representative of the Department of State certifying that the crimes for which the Fugitive is wanted in Latvia are extraditable offenses under the Treaty.

    6.  Competent legal evidence.

    The standard of proof in extradition proceedings is that of probable cause as defined in federal law. *Kastnerova v. United States*, 365 F.3d 980, 987 (11th Cir. 2004); *Sindona v. Grant*, 619 F.2d 167 (2nd Cir. 1980).  This means evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief in the guilt of the accused. *Coleman*

---

scope of liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added). *Accord, United States v. Manzi*, 888 F.2d 204*; Brauch v. Raiche*, 618 F.2d 843 (1st Cir. 1980)*; Messina v. United States*, 728 F.2d 77 (2nd Cir. 1984); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 108 (9th Cir. 1981); *United States v. Stockinger*, 269 F.2d 681, 687 (2nd Cir. 1959); *Di Stefano v. Moore*, 46 F.2d 308 (E.D.N.Y.), *aff'd*, 46 F. 2d 310 (2nd Cir. 1930), *cert. denied*, 283 U.S. 830 (1931).  The court's analysis of the question of dual criminality is subject to the general requirement that it "approach challenges to extradition with a view toward finding the offense within the treaty." *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D.Fla. 1981).F.2d 333 (5th Cir.), *cert. denied*, 414 U.S. 847 (1973).

In comparing the foreign offense with United States law to decide the question of dual criminality, the magistrate may consider federal law, the law of the state in which the hearing is held, and the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981).

*v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973). The Supreme Court stated in *Collins v. Loisel, supra*, that "[t]he function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether evidence is sufficient to justify a conviction." 259 U.S. 309, 316. The Fourth Circuit explained the court's function in an extradition proceeding in the following terms:

> The extradition hearing is not designed as a final trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

*Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976.) *See also, Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *United States ex rel. Sakaguichi v. Kaulukukui*, 520 F.2d 726, 730-31 (9th Cir. 1975) (magistrate's function is to determine whether there is "any" evidence establishing reasonable or probable cause); *Jimenez v. Aristeguieta*, 311 F.2d 547, 562 (5th Cir. 1962); *Merino v. United States Marshal*, 326 F.2d 5, 11 (9th Cir. 1963), *cert. denied*, 397 U.S. 872 (1964); *In re Ryan*, 360 F.Supp. 270, 273 (E.D.N.Y.), *aff'd*, 478 F.2d 1397 (2nd Cir. 1973).

C.    *Role of the Judicial Officer*

The court considers the evidence presented on behalf of the requesting state and determines whether the elements defined in the treaty and the case law cited above have been established. If any explanatory evidence or evidence in support of an affirmative

defense specified in the treaty is offered, the court rules on it. The court makes written findings of fact and conclusions of law as to each of the elements, including separate findings for each offense as to which extradition is sought. *Shapiro v. Ferrandina*, 478 F.2d 894 (2nd Cir. 1973)(separate findings). If the fugitive is determined to be extraditable, he is committed to the custody of the United States Marshal to await the determination by the Secretary of State and transfer to the representatives of the requesting state. The court's Certification of Extraditability is provided to the Secretary of State together with a copy of any evidence presented on behalf of the fugitive. 18 U.S.C. §3184.

## II.  **Distinctive Features of the Law of Extradition**

A.  *Extradition Hearing Not a Criminal Proceeding*

An extradition hearing is not a criminal proceeding; its purpose is merely to decide probable cause, not guilt or innocence. *Neely v. Henkel*, 180 U.S. 109 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978); *Simmons v. Braun*, 627 F.2d 635 (2nd Cir. 1980); *United States ex rel. Oppenheim v. Hecht*, 16 F.2d 955 (2nd Cir. 1927). Thus, the person whose extradition is sought is not entitled to the rights available in a criminal trial at common law. *Charlton v. Kelly*, 229 U.S. 447, 461 (1931); *Glucksman v. Henkel*, 221 U.S. 508, 512 (1911); *Sabatier*, 586 F.2d at 869. For example: the fugitive has no right to discovery or even to cross-examination if any witnesses testify at the hearing, *Messina v. United States*, 728 F.2d 77 (2d Cir. 1984); his or her right to present evidence is

severely limited (*Id., and see* Sections II.D and E, *infra*); and the Sixth Amendment's guarantee to a speedy trial, being limited by its terms to criminal prosecutions, does not pertain to extradition proceedings, *Sabatier*, 586 F.2d at 869.

    B.  *Inapplicability of Federal Rules of Criminal Procedure and Evidence*

The Federal Rules of Criminal Procedure do not apply to extradition proceedings.  *See, Sabatier*, 586 F.2d at 869.  Rule 54(b)(5), F.R. Crim.P., states:  "[t]hese rules are not applicable to extradition and rendition of fugitives."  The Federal Rules of Evidence are also inapplicable.  Rule 1101(d)(3), Fed.R.Evid., provides that "[t]he rules (other than with respect to privileges) do not apply * * * [to p]roceedings for extradition or rendition"  *See, Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976); *Merino v. United States Marshal*, 326 F.2d 5, 12 (9th Cir. 1963).

    C.  *Admissibility of Evidence*

"Unique rules of wide latitude govern reception of evidence in Section 3184 hearings." *Sayne v. Shipley*, 418 F.2d 679, 685 (5th Cir. 1969)(citation omitted).  Among these unique rules are the following:

    1.  Admissibility of hearsay.

Hearsay evidence is admissible at extradition hearings and may support a finding of extraditability. *Collins v. Loisel*, 259 U.S. 309, 317 (1922); *Romeo*, 820 F.2d at 545-46 (probable cause to conclude crime was committed found on affidavit of foreign law enforcement officer only); *O'Brien v. Rozman*, 554 F.2d 780, 783

10

(6th Cir. 1977); *In re David*, 395 F.Supp. 803, 806 (E.D. Ill. 1975); *United States ex rel. Eatessami v. Marasco*, 275 F. Supp. 492, 494 (S.D.N.Y. 1967). Extradition treaties do not contemplate the introduction of testimony of live witnesses at extradition proceedings because to do so "would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916). Thus, a finding of extraditability is typically based entirely on documentary evidence. *Romeo*, 820 F.2d at 545-46; *Shapiro v. Ferrandina, supra*, 478 F.2d at 902-03; *O'Brien v. Rozman, supra*, 554 F.2d at 783; *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

    2. Certification of documents.

    In *Cucuzzella v. Keliikoa*, 638 F.2d 105 (9th Cir. 1981), the court held that 18 U.S.C. §3190 governs the admissibility of statements submitted by the requesting state and is satisfied by a certification that accords with the terms of the statute. *See also, Collins v. Loisel, supra.* Alternatively, documents may be received in evidence if they are certified in accordance with the terms of the treaty. *Emami v. United States District Court*, 834 F.2d 1444 (9th Cir. 1987).

    D. *Limitations on Fugitive's Evidence*

    A fugitive's right to controvert the evidence introduced against him is "limited to testimony which explains rather than contradicts the demanding country's proof." *Hooker v. Klein, supra*, 573 F.2d at 1368. The district court in *Matter of Sindona*, 450 F. Supp. 672 (S.D.N.Y. 1978), *aff'd*, 619 F.2d 167 (2nd Cir.

1980), discussed the distinction between contradictory and explanatory evidence and cited the established authority for the proposition that an extradition hearing should not be transformed into a full trial on the merits:

> The distinction between 'contradictory evidence' and 'explanatory evidence' is difficult to articulate. However, the purpose behind the rule is reasonably clear. In admitting 'explanatory evidence,' the intention is to afford an accused person the opportunity to present reasonably clear-cut proof which would be of limited scope and having some reasonable chance of negating a showing of probable cause. The scope of this evidence is restricted to what is appropriate to an extradition hearing. The decisions are emphatic that the extraditee cannot be allowed to turn the extradition hearing into a full trial on the merits. The Supreme Court has twice cited with approval a district court case which aptly summarizes the relevant considerations. The Supreme Court decisions are *Collins v. Loisel*, 259 U.S. 309, 316, 42 S.Ct. 469, 66 L.Ed. 956 (1922), and *Charlton v. Kelly*, 229 U.S. 447,461, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). The district court opinion is *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883) in which the court dealt with the argument of an extraditee that he should be given an extensive hearing in the extradition proceedings:
>
>> 'If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter. The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here. This would be in plain contravention of the intent and meaning of the extradition treaties.'

450 F.Supp 672 at 685. The extent to which the fugitive may offer

explanatory proof is largely within the discretion of the committing judicial officer. *Hooker v. Klein, supra*, 573 F.2d at 1369; *United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2nd Cir. 1963), *cert. denied*, 376 U.S. 952 (1964)(and cases cited therein). However, as outlined below, some matters are clearly contradictory and thus impermissible.

      E. *Impermissible Defenses*

      Defenses against extradition which "savor of technicality" should be rejected by a court as they are peculiarly inappropriate in dealings with a foreign nation. For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender. *Glucksman v. Henkel*, 221 U.S. 508, 513-14 (1910). *Accord, Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2nd Cir. 1974); *Shapiro v. Ferrandina, supra*, 478 F.2d at 904; *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).

      1. Conflicting evidence.

      The fugitive's grounds for opposition to the extradition request are severely circumscribed. *Kin-Hong*, 110 F.3d at 110; *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.), *cert. denied*, 439 U.S. 932 (1978); *First National City Bank of New York v. Aristeguieta*, 287 F.2d 219, 222 (2nd Cir. 1960); *In Re Shapiro*, 352 F. Supp. 641, 645 (S.D.N.Y. 1973). He may not introduce evidence which: conflicts with the evidence submitted on behalf of the demanding state, *Collins v. Loisel*, 259 U.S. 309, 315-17 (1922);

13

establishes an alibi, *Abu Eain v. Adams*, 529 F.Supp 685 (N.D.Ill.);

sets up an insanity defense, *Hooker v. Klein,* 573 F.2d at 1368 ; or

impeaches the credibility of the demanding country's witnesses, *In*

*re Locatelli*, 468 F.Supp. 568 (S.D.N.Y. 1979). He is limited to

introducing explanatory evidence. *See* Section II.D, above.

   2.  Trial in demanding country on other charges.

   A fugitive's contention that he will be tried in the

extraditing country for crimes other than those for which

extradition will be granted, or that surrender is being requested

for political offenses, must be rejected as baseless, without

merit, or beyond the responsibility of the court, for the United

States Government does not presume that the demanding government

will seek a trial in violation of a treaty. *Bingham v. Bradley*,

241 U.S. 511, 514 (1916). Moreover, the First Circuit has

concluded,

> Under the rule of non-inquiry, courts refrain from
> investigating the fairness of a requesting nation's
> justice system, and from inquiring into the procedures or
> treatment which await a surrendered fugitive in the
> requesting country. The rule of non-inquiry, like
> extradition procedures generally, is shaped by concerns
> about institutional competence and by notions of
> separation of powers. It is not that questions about
> what awaits the relator in the requesting country are
> irrelevant to extradition; it is that there is another
> branch of government, which has both final say and
> greater discretion in these proceedings, to whom these
> questions are more properly addressed.

*Kin-Hong*, 110 F.3d at 110 (quotations and citations omitted). As

the district court noted in *Gallina v. Fraser*, 177 F.Supp. 857, 867

(D.Conn. 1959): "the Secretary of State of the United States would

not authorize the surrender of a fugitive * * * to be punished for

non-extraditable crimes, and * * * any extradition would be so conditioned as to negate this possibility."

3.  Lack of U.S. constitutional protections abroad.

Questions concerning the judicial procedure in the requesting state and the treatment that might be accorded the fugitive after extradition are not proper matters for consideration by the certifying judicial official. *Kin-Hong*, 110 F.3d at 110-111; *Ahmad v. Wigen*, 910 F.2d 1063, 1072-73 (2nd Cir. 1990)(citing *Sindona v. Grant*, 619 F.2d 167, 174 (2nd Cir. 1980); *Jhirad v. Ferrandina*, 536 F.2d 478 (2nd Cir.) *cert. denied* 429 U.S. 833 (1976); *Arnbjornsdottir-Mendler v. United States*, 721 F.2d 679, 683 (9th Cir. 1983); *Garcia-Guillern v. United States*, 450 F.2d 1189, 1192 (5th Cir. 1971), *cert. denied*, 405 U.S. 989 (1972); *Matter of Extradition of Tang Yee-Chun*, 674 F.Supp. 1058, 1068-69 (S.D.N.Y. 1987).  Considering the same issue in a slightly different context, the Court of Appeals for the District of Columbia Circuit concluded:

> What we learn from *Neely* [*Neely v. Henkel*, 180 U.S. 109 (1901)] is that a surrender of an American citizen by treaty for purposes of a foreign criminal proceeding is unimpaired by an absence in the foreign judicial system of safeguard in all respects equivalent to those constitutionally enjoined upon American trials.

*Holmes v. Laird*, 459 F.2d 1211, 1219 (D.C. Cir. 1972), *cert. denied*, 409 U.S. 869 (1972).  *Accord, Pfeifer v. United States Bureau of Prisons*, 468 F. Supp.  920 (S.D. Cal. 1979), *aff'd* 615 F.2d 873 (9th Cir. 1980).  Similarly,

> [r]egardless of what constitutional protections are given to persons held for trial in the courts of the United States or of the constituent states thereof, those protections cannot be

claimed by an accused whose trial and conviction have been
held or are to be held under the laws of another nation,
acting according to its traditional processes and within the
scope of its authority and jurisdiction.

*Gallina v. Fraser*, 177 F. Supp. 856, at 866 (D. Conn. 1959), *aff'd,*
278 F.2d 77 (2nd Cir. 1960).

## CONCLUSION

Extradition hearings are not criminal proceedings with the
concomitant constitutional protections; they are civil in nature
and limited to determining whether there is a treaty in effect
which authorizes the extradition of the Fugitive, and whether there
is probable cause to believe that the Fugitive committed the crimes
for which extradition is requested.  Proof of the existence of the
Treaty and its applicability to the Fugitive's crimes will be
offered through the submission of two affidavits from the United
States Department of State.  Those affidavits are to be accorded
"great weight."  Probable cause will be established by the
submission of police reports and other attestations from the
Republic of Latvia, as certified by the Department of State.

The Fugitive's ability to oppose, in this Court, the request
to extradite him to Latvia is narrowly circumscribed.  To the
extent that he seeks to claim that the criminal process in Latvia
is not comparable to that in the United States, or that he will
otherwise be treated unfairly in that country, those are issues to
be addressed by the Secretary of State in making the final
determination as to whether he will be extradited.  To the extent
that he has legal defenses to the crimes he committed in Latvia,
those defenses must be presented to the competent Latvian court

16

once he is extradited.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


Date: September 6, 2005        By:  *John T. McNeil*
                                    JOHN T. McNEIL
                                    Assistant U.S. Attorney

17