UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

MISC. NO. : 05-1609-CBS

UNITED STATES OF AMERICA

v.

BOGDANS HVALEJS

---

**DEFENDANT HVALEJS' WRITTEN SUMMATION**

---

The defendant BOGDANS HVALEJS, submits this written summation in lieu of an oral presentation.  The footnotes reference the government's five exhibits and utilizes the bate-stamped page numbers for citations.  Mr. Hvalejs renews his motion to exclude Exhibit Number Five, his criminal record, offered for identification purposes, as there was no dispute about identity.

The government, standing in the place of the Latvian government asserts that Mr. Hvalejs may be extradited on four criminal charges.  As the Extradition Treaty and case law require that Latvia may only prosecute him on those charges for which he is extradited, it is important for Mr. Hvalejs that this Court review each charge separately.[1]

*I. Robbery of an apartment :* The first charge occurred on December 12, 2000 when Hjvalejs was seventeen years old, and considered a juvenile.  He was the lookout while Denis Ljascuks went into the apartment and robbed it.   Hvalejs testified that he was treated as a juvenile and housed in a separate facility for juveniles.  His family fully compensated the victim, as the government's exhibit

---

[1] Extradition Treaty, Article IV. [ Government's Exhibit 1 at page 009] .

also shows. ² Hvalejs testified that he returned to the Court and was released.  He had no further court date or other obligation arising from this case.

This criminal case is not an extraditable offense for the following reasons :

1.  Mr. Hvalejs was a juvenile at the time .

2. The case has been disposed of, and therefore, extradition would place Hvalejs in jeopardy again.  This would violate both the Extradition Treaty and constitutional law.³

3.  The criminal charges are not crimes for which extradition is available pursuant to the treaty.  An extradition request must include a valid warrant of arrest from the petitioning country which specifies the crimes for which the person is sought. ⁴  The arrest warrant contained here⁵ does not state with clarity the legal basis for the arrest.  In contrast to the second crime charged, which cites the Latvian criminal code regarding theft ⁶, no statutory citation is provided here. The warrant states that the arrest occurred between 11:30 A.M. and 2:00 P.M .⁷  Breaking and Entering during the daytime is not included in the Treaty. ⁸  Nor is he extraditable as an accessory before the fact, as the Latvian law does not specify that this role is punishable by imprisonment as required by the

---

² Deposition of victim. [Government's Exhibit 2 at page 127].

³ Extradition Treaty. [Government's Exhibit 1 at page 99].

⁴ Extradition Treaty. [Government's Exhibit 1 at page 99].

⁵ Resolution on Bringing as an Accused. [Government's Exhibit 2 at pages 094-100].

⁶ Resolution [Government's Exhibit 2 at page 100].

⁷ Resolution. [Government's Exhibit 2 at page 098].

⁸ Extradition Treaty. [ Government's Exhibit 1 at page 007 ( clauses 9 and 10)].  The treaty lists breaking and entering a residence at night or breaking and entering into a list of buildings, <u>not</u> <u>dwellings</u>, anytime.

Treaty.[9] Although larceny is a listed offense,[10] it is not particularly cited in the documents.

*2. Robbery of a Car.* In August, 2001, one month after Hvalejs turned eighteen, he was arrested for stealing from a motor vehicle. He testified that his family again paid the damages and, after three weeks in jail, he was released from jail and did not have to appear in Court or submit to any conditions afterwards. If extradited In this case, he would be subject to jeopardy again.

*3. Intentional Spoilage of Property :* During the robbery from the automobile, the dashboard was allegedly damaged and Hvalejs was charged with the intentional spoilage of property, described as a " less serious offense."[11] This offense is not included in the list of extraditable offenses.[12]

*4. Possession of heroin :* Hvalejs was addicted to heroin in 2001. In November he was arrested with thirteen empty glassine bags with heroin residue and an empty heroin syringe with residue.[13] This is not an offense for which extradition is available. If this Court determines that it is an extraditable offense, it should refrain from recommending it, according to the discretion available in the treaty

---

[9] Extradition Treaty, Article II, Clause 24. [Government's Exhibit 1 at page 008]. According to the Treaty, an accessory of the fact must be shown to be punishable in the originating country.

[10] Extradition Treaty, Article II, Clause 18 [ Government's Exhibit 1 at page 008].

[11] Resolution on Bringing as an Accused. [Government's Exhibit 2 at page 099].

[12] Extradition Treaty. [Government Exhibit #1 at page 007].

[13] The government and the defendant agree that he was charged with personal use and not distribution. ( See also Exhibit 2 at page 99) . There is a disagreement about the amount of drugs, although neither party asserts that the quantity makes a difference. Hvalejs asserts that the amount was .00468 grams . The government has asserted that the quantity is 468 grams, [see its original complaint, at page 3] based on the misinterpretation of the numbers into English. As asserted by Hvalejs, the practice is to use a comma where, in English a period would be placed. The fact that the quantity is *de minimus* is borne out by the documents themselves. [ See Exhibit IV at pages 136, 144 which describe remainder, residues, and traces of drugs].

language.

The government and Hvalejs agree that the Extradition Treaty does not provide for extradition for simple possession of narcotics. The government, by its amendment, asserts that the United Nations Single Convention of Drugs [Exhibit 1] and the Amended Multilateral Convention on Narcotic Drugs provides its authority. These documents make extraditable a certain list of narcotic related crimes, without further treaties [14] With respect to opiates, the definition section includes : "medicinal opium" ( codeine would be an example), the opium poppy, and " the coagulated juice of the opium poppy".[15]  This last phrase refers to morphine, from which heroin is distilled, but not to heroin itself.

If this Court determines that Heroin is included, the treaty itself permits a government to decline to extradite for a crime which is not a serious offense.[16]  The Latvian authorities describe this as a " less serious offense". [17]   To decline to extradite would further another objective of the Treaty which is to encourage the rehabilitation of drug addicts.[18]  Hvalejs testified that the government provides no treatment facilities and no services are available except  for a prohibitive cost.  The court may notice that Hvalejs has been determined to be indigent, and would not be able to afford such services.

---

[14] United Nations Convention on Narcotic Drugs as Amended, Article 14, (iv)(b). [Goverment's Exhibit II at page 053].

[15] United Nations Convention [Government Exhibit 2 at page 018].

[16] United Nations Convention, Article 36, 2 (iv)(b)[Government Exhibit 2  at page 034 ].

[17] Resolution on Bringing as an Accused. [Government's Exhibit 2 at page 099].

[18] United Nations Convention, Article 38. [ Government Exhibit 2 at page 034].

For these reasons, the court should deny the government's request for certification of extradition.

Respectfully Submitted,

\_\_/s/ Lenore Glaser_____          Dated: <u>December 22, 2005</u>

Lenore Glaser, Esq.
25 Kingston Street, 6th Floor
Boston, MA 02111
(617) 753-9988
BBO # 194220